UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| DAVID GOULD, | * | |
| | * | |
| Petitioner, | * | |
| | * | |
| v. | * | Civil Action No. 19-cv-12227-IT |
| | * | |
| DAVID DURATE, | * | |
| | * | |
| Respondent. | * | |

<u>MEMORANDUM AND ORDER</u>

October 17, 2022

TALWANI, D.J.

Petitioner David Gould is serving a sentence at the Massachusetts Treatment Center imposed by the Massachusetts Superior Court after a jury convicted him of Enticement of a Person Under Sixteen, G.L. c. 265 § 26(c), and Dissemination of Matter Harmful to Minors, G.L. c. 272 § 28. Pending before the court is Gould's *pro se* <u>Petition</u> [Doc. No. 9] for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 and his subsequent <u>Motion to Suppress</u> [Doc. No. 73] certain evidence presented at trial. For the reasons that follow, both are DENIED.

## I.     Background

In 2015, a Bristol County jury convicted Gould of child enticement and dissemination of matter harmful to a minor. Gould was sentenced to four to five years in prison for enticement and a consecutive three to five years for dissemination. He appealed his convictions to the Massachusetts Appeals Court ("Appeals Court") alleging judicial and prosecutorial errors and challenging the sufficiency of the evidence to support his convictions. See <u>Commonwealth v. Gould</u>, 2018 WL 3421093 at *1 (Mass. App. Ct. July 16, 2018).

On review, the Appeals Court found the evidence presented at trial sufficient for a reasonable jury to find the facts as follows (using Mike as a pseudonym for the minor victim and Dana as a pseudonym for Mike's friend who testified as a witness at trial):

> In December 2012, Mike, a twelve-year-old boy, lived with his grandparents in Dartmouth. Mike was confused about his sexuality and sought advice of his friend, Dana, who was then seventeen years old. Dana suggested that Mike contact [Gould] for advice. Mike sent [Gould] a friend request on Facebook; [Gould] accepted.

> Mike and [Gould] began corresponding via Facebook's messenger feature. The two exchanged a series of messages between December 27, 2012, and January 4, 2013, that became increasingly sexually explicit. They discussed engaging in various sexual acts with each other, including oral and anal sex. [Gould] initiated some of the conversations; Mike initiated others. During these exchanges, [Gould] sent Mike several photographs of himself, including a photograph of his covered groin area and one of his exposed penis. [Gould] repeatedly urged Mike to reciprocate by sending photographs of himself and of his penis.

> [Gould] also repeatedly attempted to make plans to meet Mike in person. He encouraged Mike to leave his grandparents' house, or to have his grandparents drop him off in downtown New Bedford, so that they could meet and perform the sexual acts they had discussed. In one message, Mike gave [Gould] his grandparents' address; [Gould] replied that he would drive by and sent Mike an aerial photograph of a house, which Mike confirmed was his grandparents' house. A few days later, [Gould] messaged Mike to tell him that he was on Mike's street. In addition, when Mike told [Gould] he could leave his grandparents' house to walk in the woods behind the house, [Gould] replied, "woods are thin except by the pond"; when Mike asked, "u want to do it near the pond?" [Gould] answered, "better here in a bed."

> A few days later, Mike's aunt discovered the messages and contacted the Dartmouth police.

Id. (footnotes omitted).

The Appeals Court concluded that the evidence presented at trial was sufficient to support his convictions and that no error had been committed below. Id. Accordingly, the Appeals Court affirmed the jury's verdict on both counts. Id. On November 8, 2018, the Supreme Judicial Court of Massachusetts denied Gould's petition for further appellate review. Pet'n Ex. 24 [Doc. No. 9-1]; Commonwealth v. Gould, 480 Mass. 1110 (2018) (denying

application for further appellate review). On October 31, 2019, Gould filed a <u>Motion to Hold in Abeyance his Petition for Writ of Habeas Corpus</u> [Doc. No. 1]. The court denied the motion and Gould filed his <u>Petition</u> [Doc. No. 9] on April 8, 2020.[1] While his petition was pending, Gould filed a <u>Motion to Suppress</u> [Doc. No. 73] the victim's statements from the state court record as irrelevant.

## II.     Legal Standard

"Before pursuing relief in the federal courts . . . state prisoners [seeking federal habeas corpus review] first must exhaust all available state post-conviction remedies." <u>Currie v. Matesanz</u>, 281 F.3d 261, 262 (1st Cir. 2002) (citing 28 U.S.C. § 2254(b)(1)). A claim is exhausted where it was presented to the state's highest court and properly raised at every level of direct review. <u>See</u> <u>id.</u> at 267.

To obtain habeas relief under 28 U.S.C. § 2254 "with respect to any claim that was adjudicated on the merits in State court proceedings," a petitioner must demonstrate to the federal court that the state proceedings either (1) "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" or (2) "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d).[2]

---

[1] Respondent moved to dismiss the petition as untimely, <u>Mot. to Dismiss as Time Barred</u> [Doc. No. 19], and Gould opposed the motion, arguing that time for filing the petition was tolled by the Supreme Court's granting his motion for an extension of time to file a Petition for Writ of Certiorari, <u>Opp'n to Mot. to Dismiss</u> [Doc. No. 21]. The court accepted Gould's argument and denied Respondent's motion. <u>See</u> Mem. & Order [Doc. No. 23].

[2] Federal courts "typically look to the rationale of the intermediate appellate court where, as here, the state's highest court has summarily denied further appellate review." <u>Foxworth v. St. Amand</u>, 570 F.3d 414, 425 (1st Cir. 2009).

"A state court decision is contrary to clearly established federal law if the court applies a rule that contradicts the governing law set forth by the Supreme Court or confronts a set of facts that are materially indistinguishable from a decision of [the Supreme Court] and nevertheless arrives at a result different from [its] precedent." Linton v. Saba, 812 F.3d 112, 122 (1st Cir. 2016) (internal citations and quotations omitted) (alteration in original). Where the state court "addressed the sufficiency of the evidence supporting the conviction exclusively in the vocabulary of state law and precedent" the court must first address the threshold question of "whether the state court in fact passed upon the merits of the federal constitutional claim." Leftwich v. Maloney, 532 F.3d 20, 23 (1st Cir. 2008). "[A] state-court adjudication of an issue framed in terms of state law may receive section 2254(d)(1) deference so long as the state standard is at least as protective of the defendant's rights as its federal counterpart." Id. at 23-24. Here, the First Circuit has already concluded that because Massachusetts's sufficiency standard[3] originated from a case adopting the governing federal standard for reviewing such claims, the court may presume the federal law adjudication was subsumed within the state law adjudication. Id.; see White v. Coplan, 399 F.3d 18, 23 (1st Cir. 2005) (explaining that a federal habeas court may "infer that the federal claim was considered if the state court rejects a counterpart state claim and then cites to a case holding that the federal constitution provides no greater protection").

---

[3] On a sufficiency of the evidence challenge, under Massachusetts law, the State court must "determine whether the evidence presented at trial, together with all reasonable and possible inferences that might properly be drawn from it, was sufficient to permit a rational jury to find beyond a reasonable doubt the existence of every essential element of the crimes charged." Commonwealth v. Arroyo, 442 Mass. 135, 139-40 (2004) (citing Commonwealth v. Latimore, 378 Mass. 671, 677 (1979)).

Thus, "[t]he habeas question of whether the state court decision is objectively unreasonable is layered on top of the underlying standard governing the constitutional right asserted." <u>Leftwich</u>, 532 at 23. Under federal law, the question animating a sufficiency claim is "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt," and not whether "*it* believes that the evidence at the trial established guilt beyond a reasonable doubt" or whether there is a plausible alternate interpretation of the evidence. <u>Jackson v. Virginia</u>, 443 U.S. 307, 307 (1979) (emphasis in original) ("a federal habeas corpus court faced with a record of historical facts that supports conflicting inferences must presume—even if it does not affirmatively appear in the record—that the trier of fact resolved any such conflicts in favor of the prosecution and must defer to that resolution"). In making this evaluation, the federal court must resolve all credibility issues in favor of the verdict and view possible inferences in the light most favorable to the prosecution. <u>Morgan v. Dickhaut</u>, 677 F.3d 39, 47 (1st Cir. 2012). "In such a situation, then, the state court's decision is not vulnerable unless it evinces some increment of incorrectness beyond mere error." <u>Leftwich</u>, 532 F.3d at 23.

Moreover, "in a wrinkle peculiar to the exercise of habeas jurisdiction, we grant a presumption of correctness to factual determinations made by the state courts." <u>Id.</u> at 21 (citing 28 U.S.C. § 2254(e)(1)). That presumption of correctness under 28 U.S.C. § 2244(e)(1) is subject only to rebuttal by clear and convincing evidence. <u>RaShad v. Walsh</u>, 300 F.3d 27, 44 (1st Cir. 2002); <u>Coombs v. Maine</u>, 202 F.3d 14, 18 (1st Cir. 2000). Nonetheless, in conducting a sufficiency analysis, "some degree of intellectual rigor is required; a reviewing court should not give credence to evidentiary interpretations and illations that are unreasonable, insupportable, or overly speculative." <u>Leftwich</u>, 532 F.3d at 23 (internal quotations omitted).

An "unreasonable application of . . . clearly established Federal law" occurs when a state court decision "correctly identifies the governing legal rule but applies that rule unreasonably to the facts of a particular prisoner's case." White v. Woodall, 572 U.S. 415, 416, 426 (2014). To succeed on this theory, the petitioner must "show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." Id. at 419-20 (internal quotation and citation omitted). "This is 'meant to be' a difficult standard to meet." Virginia v. LeBlanc, 137 S. Ct. 1726, 1728 (2017) (quoting Harrington v. Richter, 562 U.S. 86, 102 (2011)); see also Hill v. U.S., 368 U.S. 424, 428 (1962) (evaluating whether an alleged error is "a fundamental defect which inherently results in a complete miscarriage of justice, [or] an omission inconsistent with the rudimentary demands of fair procedure"). A writ of habeas corpus claiming error of state law is cognizable only if the violations are of constitutional magnitude. Reed v. Farley, 512 U.S. 339, 353-54 (1994).

When reviewing a *pro se* petition, the pleadings must be given the benefit of liberal construction. Erickson v. Pardus, 551 U.S. 89, 94 (2007) (*per curiam*) ("A document filed *pro se* is to be liberally construed") (quotation marks omitted); Haines v. Kerner, 404 U.S. 519, 520 (1972).

### III.   Discussion

Gould's petition raises several grounds for relief. Gould asserts that the Appeals Court unreasonably applied clearly established federal law in finding that (A) the evidence was sufficient to convict him of child enticement; (B) the evidence was sufficient to convict him of dissemination of materials harmful to a minor; (C) testimony on prior sexual encounters with a

minor was allowed; and (D) the evidence supported certain factual findings necessary for his conviction.[4]

A.   *Enticement of a Minor*

Under Massachusetts law, "[a]ny one who entices a child under the age of 16, or someone he believes to be a child under the age of 16, to enter, exit or remain within any vehicle, dwelling, building, or other outdoor space with the intent that he or another person will violate [one or more enumerated criminal statutes including child rape and indecent assault and battery on a child under fourteen]" is criminally liable for child enticement. M.G.L. c. 265, § 26C(b).

Gould argued before the Appeals Court and again here that the evidence presented at trial was not constitutionally sufficient to satisfy the statutory element that he intended to implicitly or explicitly entice the victim to a specific location to engage in sexual activity.[5] On review, the Appeals Court found that a jury could reasonably conclude, based on Gould's conversation over Facebook Messenger ("Messenger") with the victim, that Gould "enticed Mike  when he invited Mike to leave his grandparents' home and meet him at a predetermined location in the woods

---

[4] In his Memorandum [Doc. No. 48], Gould advances one additional claim for relief, alleging that the dissemination of material harmful to a minor conviction was duplicative of the child enticement conviction and thus his conviction on the former charge was in violation of the Fifth Amendment. This claim is not properly before the court where it was not included in the claims set forth in his Petition. Moreover, according to his Petition [Doc. No. 9], Gould also failed to exhaust the claim in state court. Gould reports that he argued to the Appeals Court that dissemination of matter harmful to a minor is duplicative of the child enticement conviction and that therefore he is constitutionally barred from being convicted of both, but he does not report that he sought further appellate review of this issue before the Supreme Judicial Court. Id. at 4.

[5] Specifically, Gould argues that the government did not produce (1) evidence sufficient to satisfy the "specific location" or (2) evidence of a "certain act" such as "specific arrangements" to meet the victim. Pet'r Mem. at 6-7, 13 [Doc. No. 48]. In his view, "there is no evidence in the trial Facebook exhibit that [Gould's] intent or conduct evinces any form of an invitation to a statutorily required specific location, explicitly or implicitly, to [victim] for illegal sexual conduct." Pet'n at ¶ 12 [Doc. No. 9].

(near the pond where he told Mike the woods were not 'thin')" and also when he suggested that "they could then go to the defendant's 'bed' and engage in illegal sexual activity." Gould, 2018 WL 3421093 at *2. And because these suggestions offered specific locations "as potential meeting spots" chosen by Gould, "[t]he invitation was implicit." Id.; see Commonwealth v. Hall, 80 Mass. App. Ct. 317, 325 (2011); Commonwealth v. Disler, 451 Mass. 216, 230 (2008) (invitation to home sufficient evidence of enticement to specific location). Where the Appeals Court relied on record evidence viewed in the light most favorable to the jury verdict to support the properly-drawn inferences informing its analysis, and where the analysis is consistent with the federal requirements for reviewing sufficiency claims, the court finds Gould is not entitled to relief based on his sufficiency claim related to the specific location element.[6]

Gould argues further that the Appeals Court unreasonably applied the sufficiency standard in determining that the evidence demonstrated, beyond a reasonable doubt, that he enticed the victim with the requisite criminal intent. The Appeals Court held that a jury could reasonably have concluded Gould's sexually-explicit statements in the Messenger chat were sufficient to evidence his intent to meet with the victim in order to engage in unlawful sexual activity with a minor. Gould, 2018 WL 3421093 at *1-2 (Gould and victim "discussed engaging in various sexual acts with each other, including oral and anal sex. [Gould] initiated some of the conversations; Mike initiated others."); see Disler, 451 Mass. at 230 ("The explicit statements he

---

[6] Gould is also mistaken as to the law. While Gould correctly points out that "merely sending words" is insufficient to be convicted of enticement, an overt act is not necessary. Words in conjunction with evidence of "intent to violate one or more of the enumerated criminal statutes" is a sufficient basis to convict. Disler, 451 Mass. at 222. Words and gestures must be viewed in context to determine whether they fit within the commonly understood meaning of "entice." Id. at 223. Specifically, the statute criminalizes "messages that lure, induce, persuade, tempt, incite, solicit, coax, or invite the recipient to take certain action . . . if the messages are accompanied by the sender's intent to do one of the enumerated criminal acts." Id. (emphasis removed).

made to [the victim] about the sexual acts he wanted to perform on her . . . were sufficient to evidence an intent to commit statutory rape").

Gould challenges this conclusion, alleging the Appeals Court committed the same error as the trial court by inferring his intent from the context of his conversation with the victim as a whole—including contextually considering the victim's statements—and not exclusively from Gould's own words, taken in isolation.[7] Gould argues that the trial and Appeals Court imputed to Gould the victim's desire to have sex with Gould in an unlawful joint-venture approach to criminal intent. But Gould's argument is rooted in a misunderstanding of the law. The jury may make reasonable inferences based on the evidence, and the Appeals Court, on review, is required to view reasonable inferences in the light most favorable to the prosecution. See Morgan, 677 F.3d at 47 ("In applying the Jackson standard, not only must all evidence be examined in the light most favorable to the prosecution, but so must 'inferences that may be reasonably drawn from it'") (quoting United States v. Andujar, 49 F.3d 16, 20 (1st Cir. 1995)); see also Gould, 2018 WL 3421093 at *4 ("Since intent is often not susceptible to direct proof, the Commonwealth must frequently resort to alternative sources of evidence"). After reviewing the record, the court finds the Appeals Court's application of the sufficiency standard was not objectively unreasonable where it found a jury could reasonably have inferred Gould's intent to arrange a sexual encounter from "[his] sexually explicit statements," taken with other "messages

---

[7] Gould's Motion to Suppress [Doc. No. 73] asks the court to eliminate the victim's statements from the record entirely to avoid prejudice against him. Gould argues that the victim's words are "immaterial matter" that have "only added confusion and prejudice to [Gould's] efforts to have the evidence properly evaluated with respect to his guilt" and that he is not responsible for the "whole conversation." But the Appeals Court properly considered the Facebook conversation as a whole—using the victim's statements to contextualize and explain Gould's contribution to the conversation—to determine what a reasonable jury could have concluded from them. Accordingly, Gould's Motion to Suppress [Doc. No. 73] is denied.

to Mike" including Gould's suggestion of meeting by the pond where the woods were not thin or

in his bed where it would be more comfortable. Gould, 2018 WL 3421093 at *2. A reviewing

court cannot second-guess "a jury's verdict where it has chosen a reasonable interpretation of the

evidence before it" and that appears to be just what occurred here. Morgan, 677 F.3d at 54.[8]

---

[8] In his Memorandum [Doc. No. 42], Gould also argues that his First Amendment rights were
violated when the jury convicted him on the enticement count based on online conversations
alone. However, Gould failed to raise this argument with any specificity both at the
Massachusetts Court of Appeals and in his Petition [Doc. No. 9] filed with this court. See Pet'r
Mem. [Doc. No. 42]; Def.'s App. Brief [Doc. No. 65]. And regardless, federal courts have
consistently held that the First Amendment does not preclude a jury from convicting a defendant
of child enticement based on words alone where those words demonstrate the defendant had the
requisite intent to commit one of the enumerated crimes. See, e.g., United States v. Dwinells, 508
F.3d 63, 71 (1st Cir. 2007) ("Speech intended deliberately to encourage minors' participation in
criminal sexual conduct has no redeeming social value and surely can be outlawed under the
same rationale that allows proscription of the provision of pornography to minors"); United
States v. Tykarsky, 446 F.3d 458, 473 (3d Cir. 2006) (noting "[t]here is no First Amendment
right to persuade minors to engage in illegal sex acts" and finding federal enticement statute
conforms with First Amendment because "statute's scienter requirement clarifies the law and
excludes legitimate activity, including pure speech, from its scope"); United States v. Meek, 366
F.3d 705, 721 (9th Cir.2004) ("[N]o otherwise legitimate speech [is] jeopardized by § 2422
[Coercion and enticement of a minor] because the statute only criminalizes conduct, i.e., the
targeted inducement of minors for illegal sexual activity. . . . [S]peech is merely the vehicle
through which a pedophile ensnares the victim"); see also United States v. Hornaday, 392 F.3d
1306, 1311 (11th Cir. 2004) ("Speech attempting to arrange the sexual abuse of children is no
more constitutionally protected than speech attempting to arrange any other type of crime").
Here, the Appeals Court determined that a reasonable fact finder could conclude—as the jury did
and the trial court affirmed—that Gould enticed the victim and did so with the intent to "arrange
an illegal sexual encounter." Gould, 2018 WL 3421093 at *2. Accordingly, given Gould's
sexually-explicit Messenger conversations with the minor victim, repeated requests for the
victim to send Gould nude photographs and attempts to persuade the victim to meet up with
Gould in a concealed place suitable for sex, the court finds the Appeals Court's decision to
uphold his child enticement conviction was not contrary to clearly established First Amendment
law.

B.     *Dissemination of Material Harmful to a Minor*

Gould argues the Appeals Court's rejection of his sufficiency challenge to his

dissemination conviction was unreasonable where there was insufficient evidence at trial to

satisfy the First Amendment's obscenity test.

Massachusetts law prohibits the purposeful dissemination of "harmful matter" to a minor.

M.G.L. c. 272, §§ 28, 31. Matter is "harmful to minors" either if it is "obscene" or "if taken as a

whole it (1) describes or represents nudity, sexual conduct or sexual excitement, so as to appeal

predominantly to the prurient interest of minors; (2) is patently contrary to prevailing standards

of adults in the county where the offense was committed as to suitable material for such minors;

and (3) lacks serious literary, artistic, political or scientific value for minors." M.G.L. c. 272,

§ 31. "Matter is obscene if taken as a whole it (1) appeals to the prurient interest of the average

person applying the contemporary standards of the county where the offense was committed; (2)

depicts or describes sexual conduct in a patently offensive way; and (3) lacks serious literary,

artistic, political or scientific value." Id.

Before the Appeals Court, Gould asserted that the trial court erred by conflating the

obscenity prong and the alternate prong in the jury instructions. The Appeals Court agreed,

finding that the "jury instructions apparently conflated the 'obscenity' prong of the statute with

the 'alternate' prong, essentially giving the jury only the option to convict [Gould] under the

obscenity test." Gould, 2018 WL 3421093 at *3 n.7. But the Appeals Court concluded that the

error was harmless because "the evidence was sufficient to establish that the matter the defendant

disseminated to [the victim] was obscene, and thus harmful to minors." Id. Now Gould argues

that in finding the jury reasonably could have found the material obscene, the Appeals Court's

decision was in contravention of his First Amendment rights because the record is insufficient to satisfy the First Amendment standard for obscene speech.

Obscene speech (1) appeals to the prurient interests, (2) describes sexual conduct in a patently-offensive way, and (3) lacks serious literary, artistic, political or scientific value. Miller v. California, 413 U.S. 15, 24 (1973). The Appeals Court applied the Massachusetts obscenity statute, which tracks Miller and is thus a constitutionally-sufficient proxy. Cf. United States v. Gravenhorst, 377 F.3d 49, 52 (1st Cir. 2004) (finding a jury instruction to be sufficient where it applied the state's obscenity statute which mirrored Miller), judgment vacated on other grounds, 544 U.S. 1029 (2005). Gould agrees that the messages at issue lack serious literary, artistic, or scientific value, but argues the record evidence is insufficient to show—and the Appeals Court failed to consider—whether the speech appeals to the prurient interests and describes sexual conduct in a patently-offensive way as required under the First Amendment.

The Appeals Court held that the jury could reasonably have found the disseminated materials obscene because, "[v]iewing the entirety of the correspondence in context, the descriptions of the sexual acts that the defendant planned to engage in with Mike describe sexual conduct in a patently offensive way that plainly appeals to the prurient interest of an average person." Gould, 2018 WL 3421093 at *3.

The Appeals Court applied the proper standard to facts supported by the record and therefore the court cannot conclude that the Appeals Court's conclusion "evinces some increment of incorrectness beyond mere error." Leftwich, 532 F.3d at 23.

Accordingly, because the Appeals Court's decision comported with constitutional requirements, the court finds Gould is not entitled to relief for his dissemination conviction on sufficiency grounds.

C.     *Reliance on Propensity Evidence*

Gould argues the Appeals Court erred in upholding the trial court's evidentiary decision to allow the individual who introduced Gould to the victim and who, as a minor, had a sexual relationship with Gould to testify at trial. Gould argued before the Appeals Court, and again here, that because the witness was allowed to testify that her sexual relationship with Gould began after engaging in online conversations with him on Facebook Messenger, her testimony was inadmissible propensity evidence and that he was prejudiced by its admission. In upholding the trial court's evidentiary decision, the Appeals Court reasoned that the testimony was admissible because it was probative of Gould's intent to engage in criminal activity and "inextricably intertwined with the facts of the case and essential to the jury's understanding of the entire picture." Gould, 2018 WL 3421093 at *4.

The admissibility of evidence in state trials is governed by state law. Estelle v. McGuire, 502 U.S. 62, 67-68 (1991); Evans v. Thompson, 465 F. Supp. 2d 62, 79 (D. Mass. 2006) (admission of evidence in state-court criminal trial is determined by state evidentiary law and does not provide a basis for habeas relief). Thus, Gould's claim is not cognizable before this court unless the evidentiary error was of such magnitude that it constituted an independent due process violation. Lyons v. Brady, 666 F.3d 51, 55–56 (1st Cir. 2012). And even "[i]f the petitioner has managed to demonstrate such an error, it is still not enough to win because he must also illustrate 'actual prejudice' resulted from the mistake." Strickland v. Goguen, 3 F.4th 45, 54 (1st Cir. 2021) (quoting Davis v. Ayala, 576 U.S. 257, 267 (2015)).

Here, Gould challenged the trial court's evidentiary decision as to the witness's testimony as a matter of state law without asserting a due process claim. Even if he such a constitutional challenge had been asserted, Gould would not be entitled to relief because the Messenger

conversation on its own provides evidence sufficient to convict Gould on both counts, even without the challenged testimony. Gould's argument thus fails on multiple levels. First, the Appeals Court was reasonable in finding no evidentiary error, and Gould did not raise a due process challenge. Second, no prejudice resulted from admitting the testimony where the documentary evidence of guilt was so strong. Accordingly, Gould is not entitled to relief based on his challenge to the admission of the witness's testimony.

D.   *Factual Error*

Next, Gould contends that the Appeals Court's adoption of the facts as recited by the Commonwealth was unreasonable based on the record evidence. Specifically, Gould argues that the factfinder drew unlawful inferences from the victim's statements about Gould's plans and intent.

The Appeals Court "[i]n reviewing the defendant's motion for a required finding of not guilty . . . examine[d] the evidence as it stood at the close of the Commonwealth's case, viewed in the light most favorable to the Commonwealth." Gould, 2018 WL 3421093 at *1 (citing Commonwealth v. Schmieder, 58 Mass. App. Ct. 300, 301 (2003)). This is the proper standard for appellate review of a jury verdict, consistent with constitutional principles. Further, in reviewing the sufficiency of the government's proof, the reviewing court must "rehearse the facts in the light most favorable to the jury verdict, consistent with record support." Dwinells, 508 F.3d at 65 (citing United States v. Carroll, 105 F.3d 740, 742 (1st Cir. 1997)). On habeas review, the federal court must "look to see if the [state court's] application of the test was unreasonable and . . . owe[s] the [state court] deference" in that analysis. Strickland, 3 F.4th at 57. Moreover, the presumption of correctness applies. The court owes deference to the Appeals Court's findings as to all "basic, primary, or historical facts: facts in the sense of a recital of external events and

14

the credibility of their narrators." <u>Sanna v. Dipaolo</u>, 265 F.3d 1, 7 (1st Cir. 2001) (internal

quotations omitted). Deference is also given to the state's implicit determinations about

credibility. <u>Teti v. Bender</u>, 507 F.3d 50, 59 (1st Cir. 2007). To rebut the presumption of

correctness and obtain review of the state court's factual findings, petitioner must show error by

clear and convincing evidence. 28 U.S.C. § 2254(e)(1). A federal court will not set aside the state

court's factual findings absent petitioner's "clear[ing] a high hurdle." <u>Mastracchio v. Vose</u>, 274

F.3d 590, 598 (1st Cir. 2001).

      Gould contends that the Commonwealth misrepresented trial evidence on appeal and that

the Appeals Court failed to correct those errors. However, Gould fails to articulate material

differences in the record that make the Appeals Court's ruling so lacking in justification that

"there was an error well understood and comprehended in existing law beyond any possibility for

fairminded disagreement," <u>White</u>, 572 U.S. at 420, or that alter the facts so significantly that no

reasonable jury to find him guilty based on the correct record. Rather, Gould is disputing the

Appeals Court's interpretation of the record evidence and inferences drawn therefrom, and not

the record itself. For example, the trial transcript indicates that on December 28, 2012, at around

11:33 p.m., Gould and the victim had the following conversation over Messenger:

> Petitioner: thinking of our eventual meeting (sends photo of Nestle Juicy Juicy drink)
> Victim: So when we going to do stuff
> Petitioner: (sends photo of flaccid penis)
> Petitioner: Won't be easy if your grandparents won't let you out of the house
> Victim: I can leave house to go for walk in woods like that I can
> Petitioner: Never go to mall on bike
> Victim: Nope
> Petitioner: Really?
> Victim: yup
> Petitioner: Your woods are thin except by the pond
> Victim: u want to do it near the pond
> Petitioner: better here in a bed…
> Victim: how are we going to do that
> Petitioner: you gotta be able to leave your house for a few hours

Resp. Suppl. Answer R-19 (citing Ex. 4 pp. 36-41, Tr 9, 45-47)) [Doc. No. 65]. Gould contends

the transcript contains prejudicial factual errors and presents the court with what he contends is

the correct version. But Gould's version is substantially the same, with a few immaterial

discrepancies underlined in the text of the conversation as Gould believes it should have been

transcribed into the record:

> Petitioner: Sends a photograph of a "<u>Juicy Juice</u>" juice box Captioned, "Thinking of our
> eventual meeting"
> Victim: so<u>o</u> when we <u>doing</u> stuff
> Petitioner: Sends a photograph of a flaccid penis
> Petitioner: Won't be easy if your <u>grand parents</u> won't let you out of the house<u>.</u>
> Victim: i can leave house to go for <u>a</u> walk in woods like that I can <u>do</u>
> Petitioner: Never go to mall on bike
> Victim: nope
> Petitioner: Really?
> Victim: yup
> Petitioner: Your woods are thin except by the pond
> Victim: u want to do it near the <u>pound [sic]</u>
> Petitioner: Better here in a bed
> Victim: how [] we going to do that
> Petitioner: You gotta be able to leave [] for a few hours

Pet'r Supp. App. D ¶¶ 171-85 [Doc. No. 16-1] (allowed by Elec. Order [Doc. No. 61]). The

differences are immaterial. <u>See, e.g.</u>, "grand parents" instead of "grandparents"; misspelling

"pond"; dropping "are" from "how are we going to do that." The other portions of the multi-day

Messenger conversation that Gould challenges contain similarly nonmaterial typographical

discrepancies. <u>See</u> Resp. Suppl. Answer [Doc. No. 65]; Pet'r Supp., App. D [Doc. No. 16-1].

Accordingly, the court finds Gould was not prejudiced by the Appeals Court's recitation of the

facts as presented at trial.

> Gould also challenges the Commonwealth's interpretation of the trial evidence in its

presentation of the facts to the Appeals Court, and the Appeals Court's adoption of the

Commonwealth's interpretation on review. But a prosecutor "may comment on evidence

developed at trial and draw inferences from such evidence," as it did here. Commonwealth v. Dodgson, 80 Mass. App. Ct. 307, 313 n.6 (2011) (noting that doing so is proper where "the prosecutor did not draw improper inferences or misstate the law") (citing Commonwealth v. Chavis, 415 Mass. 703, 713 (1993)). The Commonwealth argued that implicit in these written conversations was Gould's intent to entice the victim to engage in sexual activity with him. The Appeals Court agreed that a reasonable jury could draw such an inference. Gould, however, argues that the Commonwealth engaged in "speculative prejudice" by presenting the Messenger conversations to the Appeals Court as proof of his intent because in doing so, the fact finder and reviewing court improperly relied on the victim's words to evidence Gould's intent. But the Appeals Court properly considered the Messenger conversation as a whole. And, as discussed above, a jury may make reasonable inferences based on the evidence, and the Appeals Court, on review, is required to view reasonable inferences in the light most favorable to the prosecution. See Morgan, 677 F.3d at 47 ("In applying the Jackson standard, not only must all evidence be examined in the light most favorable to the prosecution, but so must 'inferences that may be reasonably drawn from it'") (quoting United States v. Andujar, 49 F.3d 16, 20 (1st Cir. 1995)). It was not unreasonable, based on this evidence, for the Appeals Court to conclude that Gould's own words, contextualized within the full conversation, evidenced Gould's intent to entice the victim. Accordingly, the court finds no factual error justifying habeas relief.

## IV.   Conclusion

For the foregoing reasons, Gould's Motion to Suppress [Doc. No. 73] and Petition for Writ of Habeas Corpus [Doc. No. 9] are DENIED.

IT IS SO ORDERED.

Date: October 17, 2022                                    /s/ Indira Talwani
                                                          United States District Judge